IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **Linda W.**[1], | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 7:20–CV–27 |
| | ) |
| **ANDREW SAUL,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Linda W. ("Linda") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for a period of disability and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; R. 195–96. Specifically, Linda claims the Administrative Law Judge ("ALJ") erred by failing to properly assess her mental impairments, determine her RFC, and assess her allegations regarding her symptoms. R. 19.

I agree that the ALJ's decision is not supported by substantial evidence, as the ALJ failed to properly evaluate Linda's mental impairments under SSR 96-8P, including accounting for her ability to sustain work activity over the course of an eight-hour workday. Accordingly, I **RECOMMEND GRANTING in part** Linda's Motion for Summary Judgment (Dkt. 15), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 11) and **REMANDING** this matter for further administrative consideration.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

## **STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Linda failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citations omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at his conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636; Monroe, 826 F.3d at 189. Similarly, I find that remand is appropriate here because

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

the ALJ's opinion leaves the court to guess at how she reached her conclusions regarding Linda's RFC.

## **CLAIM HISTORY**

On September 15, 2016, Linda filed a Title II application for a period of disability and DIB, claiming her disability began on July 27, 2016, due to fibromyalgia, depression, irritable bowel syndrome ("IBS"), migraines, asthma, and possible multiple sclerosis.[3] R. 195–96, 213. Linda meets the insured status requirements of the Act through December 31, 2020. R. 209. The state agency denied Linda's applications at the initial and reconsideration levels of administrative review. R. 87–100, 101–12. On June 19, 2018, ALJ James Grimes held a hearing to consider Linda's claims for DIB. R. 46–86. On November 20, 2018, the ALJ entered his decision analyzing Linda's claims under the familiar five-step process[4] and denied her claims for benefits. R. 10–20.

The ALJ found that Linda was insured at the time of the alleged disability onset and that she suffered the following severe impairments: fibromyalgia; degenerative disc disease, with radiculopathy; obesity; and, depression. R. 13. The ALJ determined that these impairments either individually or in combination did not meet or medically equal a listed impairment. Id. The ALJ

---

[3] Linda protectively filed for disability and supplemental security income ("SSI") on August 23, 2016. R 192. Linda's September 2016 application for a period of disability and DIB indicates that Linda dropped her SSI claim. R. 195.

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curium) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.3d 664, 666 (4th Cir. 1975).

3

specifically considered listing 1.02 (major joint dysfunction) and 12.04 (depressive, bipolar, and related disorders). R. 13–14. The ALJ also considered Social Security Ruling 02-1p. Soc. Sec. Ruling 02-1p Titles II & Xvi: Evaluation of Obesity,[5] SSR 02-1p, 2002 WL 34686281 (S.S.A. Sept. 12, 2002). The ALJ found that regarding her mental impairments, Linda had moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, and mild limitations in interacting with others and adapting or managing oneself. R. 14–15.

The ALJ concluded that Linda retained the residual functional capacity ("RFC") to perform sedentary work. R. 15. Specifically, Linda can perform simple, routine tasks, in a job with only occasional changes in a routine work setting and no more than occasional interaction with the public and co-workers. Id. Linda can frequently balance, but never climb ladders or scaffolds, never crawl, occasionally climb ramps, stairs, stoop, kneel, or crouch. Id. Linda can occasionally be exposed to hazards or vibration. Id. The ALJ determined that Linda is unable to perform any past relevant work but could perform jobs that exist in significant numbers in the national economy, such as assembler, weight tester, and addressing clerk. R. 20. Thus, the ALJ determined that Linda was not disabled. Id. Linda appealed the ALJ's decision and the Appeals Council denied her request for a review on November 13, 2019. R. 1–6.

## ANALYSIS

Linda alleges that the ALJ failed to properly assess her mental impairments, determine her RFC, and assess her allegations regarding her symptoms. Pl.'s Br. at 19, Dkt. 16. Linda

---

[5] In May 2019, the Social Security Administration rescinded and replaced SSR 02-1p with SSR 19-2p. Soc. Sec. Ruling 19-2 Titles II and Xvi: Evaluating Cases Involving Obesity, SSR 19-2p, 2019 WL 2374244 (S.S.A. May 20, 2019). The ALJ issued the decision in this case in November 2018, before the new rule. The old rules contained in SSR 02-1p therefore apply. See Williams v. Saul, No. 1:19-cv-983, 2020 WL 5802707, at *5 n.2 (E.D. Va. Sept. 29, 2020).

alleges that she suffers from depression and memory issues. She participated in somewhat regular supportive counseling between 2017 and 2018. R. 14, 17–18; 232–40; 807–12, 840–41. Linda also alleges that she suffers from several physical conditions, including fibromyalgia and obesity. R. 4–19. Finally, Linda claims that she suffers frequent migraines. The ALJ did not include migraines as one of Linda's severe impairments.[6] R. 13.

### A. Medical History Overview[7]

Linda has a history of complaints and treatment related to memory problems and depression. In June 2017, Kathleen Fuchs, Ph.D., performed a neuropsychological evaluation based on Linda's complaints of memory problems. R. 461–65. Dr. Fuchs reviewed Linda's medical records and administered a battery of tests broadly focused on Linda's cognitive abilities. Id. Linda's results indicated below average to average ability. R. 463–64. Dr. Fuchs ultimately concluded Linda displayed inconsistencies in her attention and working memory despite presenting "average baseline intellectual abilities." R. 464. Dr. Fuchs found that Linda had the cognitive capacity to function in the workforce, however, "factors such as mood issues or

---

[6] Linda complained of migraines relatively frequently. See R. 367–69, 371–75, 396, 451–52, 765–66, 814. The ALJ failed to consider whether Linda's migraines were severe at step two of the sequential evaluation. R. 13. This, in itself, is not necessarily reversible error. See Smith v. Astrue, No. 5:10-cv-399, 2011 WL 7561483, at *4 (E.D.N.C. Aug. 16, 2011); Jones v. Astrue, No. 5:07-cv-452, 2009 WL 45541, at 4 *2 (E.D.N.C. Feb. 23, 2009) ("This court . . . finds it is not reversible error where an ALJ does not consider an impairment is severe at step two of the sequential evaluation provided the ALJ considers that impairment in subsequent steps."). The ALJ referenced Linda's migraines only once in his analysis. R. 16. While the ALJ is not required to discuss with specificity all evidence in the record in reaching his decision, he must provide the court with sufficient reasoning for determining that a proper legal analysis has been conducted. See Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 762 n.10 (4th Cir. 1999); Keeton v. Dept. of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] Only Linda's mental impairments are described because this case is remanded on that basis. Linda's physical impairments are briefly described below: Linda generally complains of weakness, tingling, and numbing in her arms and legs, especially on her left side, as well as back pain. See, e.g., R. 370, 373, 406–09. In 2015, Sean Burke, M.D., diagnosed her with fibromyalgia. R. 406–09. Later testing indicated Linda does not have multiple sclerosis. R. 406–09, 455. In addition to complaints of bodily pain, Linda also complained of migraines at several appointments between 2014 and 2018. See R. 367–69, 371–75, 396, 451–52, 765–66, 814.

fatigue could compromise her ability to do so." R. 465. The ALJ gave Dr. Fuchs's opinion significant weight. R. 18.

Linda presented to Klaire Mundy, Psy.D., between August 2017 and April 2018 for supportive counseling. R. 807–23, 840–41. In these eight sessions, Linda described her interpersonal relationship problems, especially with her husband, and feelings of depression and anxiety. Id. Dr. Mundy reported some progress at these sessions. Id. In February 2018, Dr. Mundy wrote a medical opinion letter describing Linda's treatment progress. R. 776. Dr. Mundy noted that Linda cancelled multiple sessions due to physical symptoms and depression, but stated that otherwise, Linda was invested in her treatment. Id. Dr. Mundy ultimately concluded that Linda was "physically and psychologically compromised" at times and that her current ability to "engag[e] in a consistent pattern of employment is highly unlikely." Id. The ALJ assigned this opinion some weight. R. 18.

### B. Mental Impairments under SSR 96-8P

Linda argues that the ALJ failed to properly determine her RFC, specifically as it relates to her moderate limitations in concentration, persistence, or pace. Pl.'s Br. at 19–26, Dkt. 16. I agree that the ALJ failed to assess her mental impairments as required by SSR 96-8P, specifically by failing to address Linda's ability to sustain work activity over the course of an eight-hour workday.[8] See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

---

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarified that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Shinaberry, 952 F.3d at 121. Rather, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r, 631 F.3d 1176, 1180 (11th Cir. 2011)). Shinaberry further confirms that Mascio does

not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. See also Monroe, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

In Thomas v. Comm'r, the ALJ found the claimant had moderate limitations in concentration, persistence, or pace, and concluded that the claimant had the RFC to perform light work with several additional mental limitations. 316 F.3d 307, 310 (4th Cir. 2019). The Fourth Circuit reversed, clarifying that when an ALJ finds a claimant has moderate limitations in concentration, persistence, or pace the ALJ is expected to include "explicit conclusions about how [the claimant's] mental limitations affect her ability to perform job-related tasks for a full workday—a benchmark established by the [S.S.A.'s] own regulations." Id. at 312 (citing SSR 96-8P, 1996WL 374184 at *2); see also Pearson v. Saul, No. 9:19-1215, 2020 WL 1644616 *4 (D.S.C. Feb. 28, 2020).

The ALJ in this case found that Linda had a moderate limitation in her ability to concentrate, persist, or maintain pace.[9] R. 14. Despite Linda's report "that she is only able to pay attention for 20 minutes, and has difficulty finishing what she starts" and her general complaints of "fatigue" and need for rest throughout the day, the ALJ concluded that the RFC's mental accommodations, allowing only "occasional interaction with the public and co-workers," "occasional changes in a routine work setting," and "[performance of] simple and routine tasks" sufficiently accommodated her limitations. R. 14–15, 232–40.

---

[9] The ALJ also found moderate limitations in Linda's ability to understand, remember, or apply information and mild limitations in her ability to interact with others or adapt or manage herself. R. 14–15.

8

The RFC accommodations do not account for whether Linda can perform simple, routine tasks for a full workday and workweek. See id. ("[T]he ability to perform simple tasks differs from the ability to stay on task"); see also McDonald v. Comm'r, SAG-16-3041, 2017 WL 3037554, at *4 (D. Md. July 18, 2017) (holding that an RFC limiting claimant to "simple, routine, and repetitive tasks" did not adequately account for the claimant's ability to sustain work throughout an eight-hour workday where the claimant had moderate difficulties in concentration, persistence, or pace). Linda may be able to perform simple and routine tasks, but the Court cannot, without further explanation, ascertain whether the ALJ believed that Linda could sustain tasks for an entire workday.

The ALJ discussed Linda's medical records and subjective allegations, concluding that while Linda has limitations, the "records do not support the level of mental limitation as alleged." R. 16–18. The ALJ also discussed Drs. Mundy and Fuchs's medical opinions and Dr. Mundy's treatment notes.[10] Regarding Dr. Mundy's treatment notes, the ALJ commented that Linda's discussions with Dr. Mundy centered on interpersonal relationships and marriage problems. R. 17. The ALJ further found that the treatment record shows a history of conservative treatment and no deterioration in mental state. Id. The ALJ only assigned some weight to Dr. Mundy's medical opinion, R. 18, which concluded Linda:

> [A]ppears to be physically and psychologically compromised to the point that at times, she is unable to leave her home in order to attend her medical/therapy appointments . . . it is likely that her physical and emotional [status] will be

---

[10] The ALJ also cited an evaluation conducted by Myla Goldman, M.D. R. 18. The ALJ likely was referring to Dr. Fuchs's June 27, 2017, opinion. The ALJ also assigned some weight to the state agency medical consultants. Id. The consultants did not discuss Linda's ability to sustain work beyond classifying her impairment in concentrating, persistence, or pace as mild. R. 93 (showing mild impairment, but not providing further explanation or narrative). The ALJ stated that he "f[ound] the claimant more limited than as determined by the State agency consultants." R. 18. It is unclear whether the ALJ's conclusion is directed at the consultants' findings regarding Linda's mental impairments, physical impairments, or both. Id. Regardless, the ALJ's analysis does not offer any clear indication that he considered Linda's ability to sustain work. Id.

> further impacted and the likelihood of her engaging in a consistent pattern of employment is highly unlikely at this time.

R. 776. The ALJ assigned significant weight to Dr. Fuchs's opinion to the extent she concluded that Linda had the cognitive capability to participate in the workforce. R. 18.

Here, the ALJ failed to draw an explicit conclusion or satisfactorily explain how Linda's mental limitations affect her ability to perform job-related tasks for a full eight-hour workday. See R. 14, 17–18 (describing Linda's mental impairments). In fact, at no point in his decision did the ALJ directly discuss Linda's ability to sustain work over a typical workday. See id. Though the ALJ included Linda's self-report "that she is only able to pay attention for 20 minutes and has difficulty finishing what she starts," he provided no analysis beyond noting that her subjective allegations were not supported by the record.[11] R. 14, 16.

Similarly, the ALJ did not specifically address any of Dr. Fuchs's opinions regarding Linda's ability to sustain work, including: (1) her behavioral observation that even though Linda coped well with challenging tasks she complained of fatigue and required a break; (2) her analysis of testing on attention, concentration, and cognitive processing speed, where Linda performed in the 16th to 34th percentile on three assessments[12]; and, (3) her opinion that Linda displayed "some inconsistencies in her attention/working memory and it may be that in her day-to-day activities when she must filter out distractions and focus her attention, she experiences more difficulty, which would appear to her to be a memory problem." R. 461–65. Instead, the ALJ merely accorded significant weight to Dr. Fuchs's opinion "to the extent that she concludes that despite some cognitive deficits and difficulty with her memory, along with mood issues and

---

[11] The ALJ also did not discuss Linda's self-report that she is often tired throughout the day and takes frequent naps. R. 232–40.

[12] Linda's percentiles ranged from below average to average scores. On one measure, Dr. Fuchs reported Linda "showed good sustained and selective attention." R. 464–65.

10

fatigue, the claimant is not precluded from work activity as she has the cognitive capacity to function in the work force." R. 18. While it is somewhat unclear whether the ALJ incorporated Dr. Fuchs's opinions regarding attention in making the RFC (given that he focused on her baseline cognitive capacity), there is no indication that the ALJ considered this analysis with regard to Linda's ability to sustain work. Id.

The ALJ discussed Dr. Mundy's medical opinion letter in some detail, referencing Dr. Mundy's statement that Linda "has cancelled many of her sessions" and that "she appears to be physically and psychologically compromised to the point at times, she is unable to leave her home in order to attend her medical/therapy appointments." R. 18. However, in his explanation for giving this letter only some weight, the ALJ suggested that "contrary to Dr. Mundy's opinion, there is no evidence to suggest the claimant's neurological and spinal pain will preclude her from a consistent pattern of employment." Id. The ALJ reached this conclusion without citing or referencing any part of the record or discussing Linda's ability to sustain work. Id.

At bottom, the ALJ failed to properly explain how the evidence supports the conclusion that Linda can sustain work for a full eight-hour day, especially given some subjective and medical evidence suggesting otherwise. See R. 12–19. Although Shinaberry held that there is "no categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC," nothing in Shinaberry excuses the ALJ here from drawing conclusions about Linda's mental limitations' impact on her ability to sustain work. Thus, as in Mascio, this court is "left to guess about how the ALJ arrived at his conclusions." 780 F.3d at 637. In short, the ALJ's failure to explain whether Linda's moderate limitations in concentration, persistence, or pace affected sustaining work in the RFC constitutes reversible error and requires remand. See Thomas, 916 F.3d at 312; Beau S. v. Comm'r, No.

11

SAG-18-2083, 2019 WL 3208002, at *3 (D. Md. July 16, 2019); Rice v. Comm'r, No. SAG-16-2582, 2017 WL 2274947, at *3 (D. Md. May 24, 2017). The ALJ must sufficiently articulate his findings such that the district court can undertake meaningful review. Monroe, 826 F.3d at 189 (citing Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) ("[A] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence that ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."); see also Patterson v. Comm'r, 846 F.3d 656, 663 (4th Cir. 2017) (emphasizing the importance of "[r]eaching a decision in a well-reasoned and documented fashion" and admonishing ALJs to "[s]how your work"). Perhaps the ALJ can explain that Linda can stay on task and sustain work for an eight-hour workday, however, his failure to do so in this case is reversible error and requires remand.

Because I find that remand is warranted based on the ALJ's failure to properly account for Linda's ability to sustain work throughout an eight-hour workday, Linda's additional allegations of error will not be addressed. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Linda's remaining allegations of error.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND GRANTING in part** Linda's motion for summary judgment, **DENYING** the Commissioner's motion for summary judgment, and **REMANDING** this case for additional consideration under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case to Glen E. Conrad, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of

record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: February 18, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge